## Kowalski v. Shopping Cart, Inc.

Before Doty, A. J., Barbieri and Takiff, JJ.

*Daniel Sherman,* for plaintiffs.

*Michael H. Egnal,* for defendant.

BARBIERI, J., September 20, 1973.—Before the court in this equity case are two petitions: one filed by plaintiffs for contempt; the other filed subsequently by defendant, seeking appellate supersedeas. Answers have been filed to both petitions. Argument and a hearing have been had on the supersedeas petition only and the issues raised therein are now ready for disposition. The contempt matter will be held in abeyance.

The supersedeas sought is pursuant to defendant's appeal to the Supreme Court from an order by a court en banc entering final judgment after dismissing ex-

ceptions to an injunctive decree nisi entered by the Hon. Bernard J. Kelley on May 3, 1972, before his retirement from the bench. Judge Kelley's adjudication was based upon testimony taken in hearings before him in 1971 and January of 1972 following the institution of proceedings as of October term, 1971. Because of Judge Kelley's retirement for health reasons, a court en banc was convened, consisting of Doty, A. J., Barbieri and Takiff, JJ., who heard argument on defendant's exceptions and entered an order on June 13, 1973, dismissing them. The entry of final judgment on Judge Kelley's decree was then ordered.

The basic injunctive relief was granted to abate a noise and odor nuisance and health hazard to which defendant's neighbors were allegedly subjected by defendant's use of a compactor-container for disposal of the garbage and rubbish resulting from defendant's retail food market. The compactor-container is maintained and operated in an open areaway adjacent to plaintiffs' premises and, under the chancellor's findings and conclusions as approved by the court en banc, is located in violation of the Philadelphia Zoning Code.

Defendant seeks by supersedeas to continue the enjoined use and practice and to avoid the removal of the compactor-container apparatus pending disposition of its appeal. It has made no effort to alleviate the nuisance during the more than a year period since Judge Kelley's decree of May 3, 1972, only seeking a supersedeas when threatened with sanctions for contempt. Furthermore, if a supersedeas is granted, the nuisance and health hazard will be prolonged because of additional delay resulting from defendant's successful request for an extension of time within which to file appellant's brief and record. This should defer argument until the Supreme Court's January 1974 session.

The adjudication of the chancellor includes the following findings of fact:

"20. The compactor-container unit is installed and in the position that it is installed creates a noise which is annoying to the normal sensitivities of a person trying to sleep in an area immediately adjacent to the compactor-container aparatus [sic].

"21. The noise attendant to the continuing use of the compactor-container and the noise of the shifting of the full container which is replaced by an empty container is excessive and loud and interferes with the medical practice of Dr. Kowalski to the effect that he has difficulty hearing his patients over the noise of the compactor and causes his medical instruments to malfunction.

"22. The smell of the drippage and seepage and stench of garbage onto the areaway, with the presence of insects and vermin attracted by the compactor-container is a continuing annoyance and discomfort and prevents the normal enjoyment and peaceful use by the plaintiffs of their own home at 482 Green Lane.

"23. The tenants at 486 Green Lane have much difficulty in using their apartments because of the noise, smell and discomfort and the attraction of the compactor-container to rodents and other vermin."

The chancellor's second conclusion of law is pertinent:

"2. The installation of the compactor-container unit attached thereto is a nuisance which regularly and persistently causes such disturbing noises as to affect the *comfort, peace and health* of the plaintiffs and their tenants and prevents them from the reasonable enjoyment of their home." (Italics supplied.)

The decree nisi as approved by the court en banc contains the following injunctive orders:

"AND NOW, this 3rd day of May, 1972, in con-

formity with the foregoing, it is ORDERED and DI-
RECTED THAT:

"1. The defendant remove from 484 Green Lane
the compactor-container apparatus.

"2. The defendant is enjoined from further use of
the areaway for the storage and placement of the com-
pactor-container.

"3. The defendant is ordered to use the said areaway
as an open area consistent with the Zoning Laws of
Philadelphia, since that open areaway was a condition
upon which the Zoning Board of Adjustment approved
the 1949 application to use the parking area west of
the food market as an addition thereto.

"4. The defendant shall cease use of this areaway
for storage of trash and debris which would encroach
upon the open area requirements of the Zoning Code of
Philadelphia."

At the outset, it must be noted that a supersedeas
application made at the late date of the one in this case,
if it had been requested prior to the effective date of the
Appellate Court Jurisdiction Act, would have been re-
fused without question simply by defendant's failure to
comply with section 4 of the Act of May 19, 1897, P. L.
67, 12 PS §1136. This section of the Act of 1897, how-
ever, was specifically repealed by section 509(a)(2)
of the Appellate Court Jurisdiction Act of July 31, 1970,
P. L. 673, 17 PS §211.509(a)(2). However, section 506
(b) of the Appellate Court Jurisdiction Act provides:

"(b) Civil Matters.—An appeal to an appellate court
in a civil matter shall operate as a supersedeas as now
or hereafter provided by act of the General Assembly or
general rule."[1]

Our research has failed to disclose any reported
case dealing with the present state of the supersedeas

[1] Act of July 31, 1970, P. L. 673, sec. 506(b), 17 PS §211.506(b).

law as to injunctions, but we are satisfied that section 9 of the Act of May 19, 1897 remains extant following enactment of the Appellate Court Jurisdiction Act and is controlling here. The section reads:

"An appeal from an order or decree granting an injunction, or relief in the nature thereof, shall operate as a supersedeas if the appellant gives bond with sufficient surety or sureties, *in such sum as the court below* shall direct, conditioned that the appeal be prosecuted with effect, that the appellant will pay all costs accrued and likely to accrue, and will pay all damages and injuries suffered by appellees from the time of decree entered until final compliance with the order or decree entered on the appeal; *but the court below may, notwithstanding the appeal, make such order or decree as may be necessary to preserve the status quo pending the determination of the appeal.*"[2] (Italics supplied.)

Plaintiff argues that the failure to comply with the bond provisions of this section within the appeal period of 30 days,[3] or at least the failure of defendant to comply prior to the time when this plaintiff sought relief in the form of contempt, bars defendant from seeking the supersedeas for which he has petitioned. We have concluded that a fair disposition may be made without meeting these questions.

Section 9 of the Act of 1897, supra, fixes no time limit for compliance with supersedeas requirements and, therefore, in the absence of authority to the contrary, we conclude that defendant may still be granted some relief even at this late date. It is for this reason that the contempt proceeding has been deferred. Obviously, if defendant is entitled to supersedeas in any

[2] Act of May 19, 1897, P. L. 67, sec. 9, 12 PS §1142.
[3] 17 PS §211.502.

degree, the question of contempt may become materially altered.

Defendant argues, however, that it is entitled to unlimited supersedeas and that this is not discretionary in any respect under section 9. Defendant points to the language which precedes the "but" clause, which has been underlined by us in the above quotation, urging that the language in the provision that follows that word does not alter the automatic, total and non-discretionary nature of the supersedeas which it claims is due. Defendant agrees, of course, that he must post bond but urges that such a bond to cover costs and damages, if any, which might be suffered by appellees pending disposition of the appeal, is the maximum relief available to plaintiffs herein under this provision in the statute.

For two reasons we conclude that defendant's contentions are lacking in merit. First, to accept defendant's contention that everything in the provision following the word "but" is without meaning is to make sheer nonsense of an apparently vital portion of the legislature's language. Secondly, acceptance of defendant's contention that supersedeas is unlimited and automatic in injunction cases would require us to rule that the chancellor in an equity matter is powerless to abate even temporarily a continuing and harmful public course of conduct on the part of a defendant. We cannot believe that the legislature intended to require that a mere appeal would automatically leave the public, if subjected to a major health hazard, without recourse during the time required to resolve the appellate issues.

Of course, even if we were disposed to accept defendant's views, which we are not, we are certainly not free to do so. The legislature's own rules of construc-

tion which are binding upon this court mandate that we must attach importance to all of the language of a statute and must otherwise follow prescribed rules of construction laid down in the Statutory Construction Act of December 6, 1972. The following provisions of the Statutory Construction Act of 1972, we believe, are pertinent:

"§1921. Legislative intent controls

"(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, *to give effect to all its provisions.*"[4] (Italics supplied.)

"§1922. Presumptions in ascertaining legislative intent

"In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

"(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

"(2) That the General Assembly *intends the entire statute to be effective and certain.* . . .

"(5) That the General Assembly intends to favor the public interest as against any private interest."[5] (Italics supplied.)

Concluding as we do that section 9 of the Act of May 19, 1897 does not rule out the power to grant a limited supersedeas, we turn now to consider what the legislature intended in providing that the trial court, acting on a supersedeas request, could provide for

---

[4] Act of December 6, 1972, P. L. 967, sec. 1921 (No. 290), 46 PS §1921.

[5] Id., section 1922, 46 PS §1922.

maintenance of the "status quo pending the determination of the appeal."[6] There can be no doubt that the status quo in this case is that state of affairs that existed prior to May of 1970 when defendant installed the rubbish and garbage compactor-container. This, we think, is the obvious view of what "status quo" means and the only sensible one to be derived from the language. We note that it is the accepted meaning attributed to the words in Black's Law Dictionary (4th Ed., 1951), which reads:

"STATUS QUO. The existing state of things at any given date. Status quo ante bellum, the state of things before the war.

"*Last actual, peaceable, noncontested condition* which *preceded pending controversy.*" (citing cases) (Italics supplied.)

There remains only defendant's contention that a distinction should be drawn between "mandatory" and "prohibitory" injunction orders, and that, while prohibitory injunctive orders *may* be superseded, mandatory ones *must* be.

Although there appears to be no support in our statutes for this distinction and classification of injunctions, we note that our Supreme Court has recognized it in the case of a preliminary injunction. See McMullan v. Wohlgemuth et al., 444 Pa. 563, 572-73, 281 A. 2d 836, 841 (1971). See also 4 Am. Jur. 2d, Appeal and Error, §387, and 93 A.L.R. 709.

We need not cope with this distinction, however, since we are all agreed that relief from the health and other nuisance hazards can be granted during the

---

[6] See Barker v. Hartman Steel Co., Ltd., 6 Pa. C. C. 183, 35 Pitts. L. J. 205 (Beaver County, 1888), affirmed 129 Pa. 551 (1889), and In Re: Baden-Economy School Appeal, 30 Beaver 112 (1970).

appeal period in this case by simply staying the mandatory injunction portions of the decree. Accordingly, we enter the following

## ORDER

And now, this September 20, 1973, it is ordered and directed that:

1. Paragraphs 1 and 2 of the chancellor's decree of May 3, 1972, are superseded and stayed pending the disposition of the appeal now pending before the Supreme Court, subject to conditions imposed hereinafter.

2. The supersession granted in paragraph 1 of this order is limited and conditioned that, if the compactor-container remains under the supersedeas in the areaway where it is now located, use thereof for any purpose and use of the areaway for storage of trash, garbage and/or debris be terminated and discontinued forthwith and during the supersedeas period.

3. All provisions of the decree of May 3, 1972, other than those superseded and stayed by paragraphs 1 and 2 of this order, remain in effect as injunctions requiring compliance therewith by defendant, including the conditions and directions in paragraph 2 hereof.

4. Defendant is ordered, as a condition to the supersedeas terms herein granted, to give bond with sufficient surety or sureties, in the sum of $2,000, conditioned that the appeal be prosecuted with effect, that appellant will pay all costs accrued and likely to accrue, and will pay all damages and injuries suffered by appellees from the time when the decree appealed from was entered until final compliance with the order or decree entered on the appeal.